No. 25-2665

IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

———

ISAAC FLORES, KARL MANUEL, TYRONE MORRIS, DARNELL PIERCE, BRIAN SNOWDEN & JAMAR WATERS, *Plaintiffs-Appellants,*

v.

BRIAN EMIG, CAPT. JASON COVIELLO & TODD KOCH, *Defendants-Appellees.*

———

On Appeal from the United States District Court for the District of Delaware No. 25-cv-00100-GBW

———

## BRIEF FOR APPELLEES

———

MARISA R. DE FEO
HUSCH BLACKWELL LLP
3411 Silverside Road,
Suite 104 B #203
Wilmington, DE 19810
302.506.8036

DANIEL G. SOLOMON
HUSCH BLACKWELL LLP
1801 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20006
202.378.2391

*Counsel for Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ........................................................................... 1

STATEMENT OF THE ISSUES ....................................................... 2

STATEMENT OF RELATED CASES AND PROCEEDINGS ............. 2

STATEMENT OF THE CASE ......................................................... 2

    A.    Factual Background ....................................................... 2

    B.    Procedural History ........................................................ 7

STANDARD OF REVIEW .............................................................. 9

SUMMARY OF THE ARGUMENT .................................................. 9

ARGUMENT ............................................................................... 11

I.    The district court correctly held that Appellants lacked standing for injunctive relief ........................................................................ 11

    A.    The district court applied the correct standard to analyze Appellants' standing to seek injunctive relief ......................... 11

    B.    Appellants did not make a clear showing that they are likely to establish standing for injunctive relief ............................... 19

CONCLUSION ............................................................................ 32

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Am. Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025) ...............................22

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)......................................30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 13

*Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*,
     81 F.4th 279 (3d Cir. 2023) .................................................................. 12

*Boynes v. Limetree Bay Ventures LLC*,
     110 F.4th 604 (3d Cir. 2024) ................................................................ 14

*Brown v. Fauver*, 819 F.2d 395 (3d Cir. 1987)...........................................28

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016) ........................... 15

*Camreta v. Greene*, 563 U.S. 692 (2011)....................................................28

*Christian Healthcare Ctrs., Inc. v. Nessel*,
     117 F.4th 826 (6th Cir. 2024) .............................................................. 15

*City of Los Angeles v. Lyons*,
     461 U.S. 95 (1983) ........... 8, 10, 11, 19, 20, 21, 23, 24, 27, 28, 30, 31, 32

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)..................................24

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety &*
     *Homeland Sec.*, 108 F.4th 194, 198 (3d Cir. 2024) ......................... 16, 23

*Delmarva Fisheries Ass'n v. Atl. States Marine Fisheries Comm'n*,
     127 F.4th 509 (4th Cir. 2025)............................................................... 17

*Do No Harm v. Pfizer Inc.*, 126 F.4th 109 (2d Cir. 2025) ........................... 15

*Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999) ................... 17

*Doe v. Univ. of S. Ind.*, 43 F.4th 784 (7th Cir. 2022)................................... 16

*Edmonson v. Lincoln Nat. Life Ins.*, 725 F.3d 406 (3d Cir. 2013) ..................9

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*,
     928 F.3d 95 (D.C. Cir. 2019) .............................................................. 14

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
     11 F.4th 200 (3d Cir. 2021)............................................................. 19, 27

**Page**

**Cases–continued:**

*Farmer v. Brennan*, 511 U.S. 825 (1994).......................................22

*Finkelman v. NFL*, 810 F.3d 187 (3d Cir. 2016) ........................... 13

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ........................................... 15

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC)*,
    528 U.S. 167 (2000).......................................................... 12

*Golden v. Baenen*, 2013 WL 3773396 (E.D. Wis. July 17, 2013)........... 29, 31

*Graham v. Connor*, 490 U.S. 386 (1989) .................................22

*Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017)....................... 19

*Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) ........................... 13

*Hernandez v. County of Monterey*,
    70 F. Supp. 3d 963 (N.D. Cal. 2014) ...................................... 31

*Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020)................. 14

*Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694 (3d Cir. 2018).............. 13

*In re Schering Plough Corp. Intron/Temodar Consumer
    Class Action*, 678 F.3d 235 (3d Cir. 2012) ............................... 13

*Ingles v. City of New York*,
    2003 WL 402565 (S.D.N.Y. Feb. 20, 2003)........................................ 29

*Johnson v. McCowan*, 549 F. Supp. 3d 469 (W.D. Va. 2021)................. 30, 31

*LA All. for Hum. Rts. v. County of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021) ............................................... 18

*Lake v. Speziale*, 580 F. Supp. 1318 (D. Conn. 1984) ............................ 29, 30

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................... 12, 15, 17, 19, 27

*Mack v. Suffolk Cnty.*, 191 F.R.D. 16 (D. Mass. 2000) ......................... 29, 30

*McCormick v. Kline*, 670 F. App'x 764 (3d Cir. 2016) ................................ 28

*Murthy v. Missouri*, 603 U.S. 43 (2024).................................. 12, 15, 17, 18

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*,
    80 F.4th 215 (3d Cir. 2023) ............................................... 17

iv

**Page**

**Cases–continued:**

*New Hope Fam. Servs. v. Poole*, 966 F.3d 145 (2d Cir. 2020) ................ 15, 16

*O'Shea v. Littleton*, 414 U.S. 488 (1974)............................................ 19, 21

*Osterback v. Moore*, 2001 WL 1770092 (N.D. Fla. Nov. 6, 2001)................29

*Oxford House, Inc. v. Township of N. Bergen*,
    158 F.4th 486 (3d Cir. 2025) ........................................................ 15

*Penn. Prison Soc. v. Cortes*, 508 F.3d 156 (3d Cir. 2007) ...........................20

*Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*,
    939 F.3d 534 (3d Cir. 2019) ........................................................ 16

*Preston v. Gutierrez*,
    1993 WL 280819 (W.D. Mo. July 23, 1993) ...................................29

*Reading v. N. Hanover Twp.*, 124 F.4th 189 (3d Cir. 2024)............. 19, 21, 27

*Revock v. Cowpet Bay W. Condo. Ass'n*,
    853 F.3d 96 (3d Cir. 2017).......................................................... 18

*Shreve v. Franklin Cnty., Ohio*,
    2010 WL 5173162 (S.D. Ohio Dec. 14, 2010) ...............................29

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020)........................ 15

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........................... 19

*Sutton v. Rasheed*, 323 F.3d 236 (3d Cir. 2003) ....................................... 21

*Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020)................... 15

*Townley v. Miller*, 722 F.3d 1128 (9th Cir. 2013) ..................................... 14

*Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023)........................................... 13

*United States v. Hayden*, 775 F.3d 847 (7th Cir. 2014) .............................. 18

*United States v. Kluger*, 722 F.3d 549 (3d Cir. 2013)................................28

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)...............................9

*Upsolve, Inc. v. James*, 155 F.4th 133 (2d Cir. 2025) ................................ 17

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018)........................................................ 15

**Page**

**Cases–continued:**

*Williams v. Wilkinson*, 132 F. Supp. 2d 601 (S.D. Ohio 2001) .....................30

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................... 14, 27

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ...................................................... 1

**Statutes:**

U.S. Const. Art. III ...........................................................................11, 15

**Rules:**

Fed. R. App. P. 30(a)(2) ............................................................................7

## INTRODUCTION

Appellants, inmates at James T. Vaughn Correctional Center in Delaware, allege that the Delaware Department of Correction's Correctional Emergency Response Team subjected them to unprovoked excessive force during a contraband search well over a year ago. They sued not only for damages, but also for injunctive relief against future constitutional rights violations.

To this end, Appellants moved for a preliminary injunction. Though running a prison is "at best an extraordinarily difficult undertaking," *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974), Appellants seek an injunction micromanaging how Vaughn maintains safety and security by dictating when the CERT can be deployed and limiting the tools that prison staff can use to obtain compliance from noncompliant inmates.

Yet Appellants lack standing to seek injunctive relief. To seek prospective relief to address future harm, a plaintiff must show that the threatened injury is certainly impending. And this must be done with more than past harm alone. Yet Appellants offer no evidence to show that they face a real and immediate threat of repeated injury. Indeed, for all the alleged imminence, nothing has happened since.

1

At most, Appellants play up their fears of another alleged arbitrary attack. But the reasonableness of such fear depends on the likelihood that the alleged unlawful conduct will reoccur. And the likelihood here depends on a long chain of hypothetical contingencies, culminating in the CERT *violating* DOC policy against using excessive force. Appellants do not come close to meeting the heavy burden required to compel a federal court to meddle in prison affairs. The Court should affirm.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that Appellants lack standing to seek injunctive relief when they failed to show a real and immediate threat of future harm.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and Appellees are not aware of any other related case or proceeding.

## STATEMENT OF THE CASE

**A.    Factual Background.**

**1.    James T. Vaughn Correctional Center.**

James T. Vaughn Correctional Center is a Level 5 prison facility in Smyrna, Delaware. JA283 (¶ 3). Vaughn is the Delaware Department of

Correction's ("DOC") largest adult, male correctional facility, housing about 2,500 inmates. *Id.* All inmates are classified and assigned security levels based on their criminal history, institutional safety and security, and program needs. JA284 (¶ 3). The Security Housing Unit has the highest level of security, housing inmates whose behavior or history require maximum security housing. *Id.* (¶ 4). The SHU has about 300 cells across three buildings. *Id.*

### 2. The Correctional Emergency Response Team.

The DOC's Correctional Emergency Response Team is a select group of correctional officers trained to provide tactical responses in emergencies and other unique situations. JA384 (¶ 2). Activating the CERT requires approval from the Bureau of Prisons Chief, Robert May. *Id.* In deciding whether to approve a CERT activation request, Chief May considers various factors, including the threat's nature and location, the number of inmates involved, and whether any contraband was found. JA385 (¶ 3). The CERT is a critical part of DOC operations, helping maintain institutional security and safety. JA385 (¶ 2); JA389 (¶¶ 24–25).

### 3. DOC Policies.

When required, the CERT can be activated to perform shakedowns: "A thorough search of a prison cell to uncover contraband and excessive

3

property." JA198; *see also* JA287 (¶ 16). DOC Policy 8.32 authorizes DOC staff, including the CERT, to perform cell searches "unannounced . . . or scheduled as part of a planned shakedown." JA330. Strip searches can also be "conducted for security purposes," including when there is a "reasonable suspicion that contraband is present." JA328.

The DOC has a Use of Force policy that governs staff interactions with inmates. JA399. Use of Force is defined as an action "to obtain compliance . . . with orders from staff to . . . control disruptive or violent offenders, [or] enforce or restore order," among other things. *Id.* The policy states:

> The use of force must be reasonable under the circumstances, and should be used only when no other reasonable alternative is available. If possible, staff shall take reasonable steps to deescalate a situation or otherwise prevent the need to use of force. The use of force may not be used as a retaliatory or disciplinary measure.

JA400. Above all, "[u]se of excessive force by Department employees or other persons is prohibited." JA401. Correctional officers and CERT members receive extensive training on the DOC's Use of Force policy. JA387 (¶ 16).

### 4. September 5, 2024.

On September 5, 2024, several high-risk incidents occurred at Vaughn. JA284 (¶ 6). Four inmates in the SHU, including Jamar Waters, were on a hunger strike. *Id.*; *see* JA292. An inmate is "considered to be on a hunger

4

strike if they declare that they are abstaining from food and/or liquids for the purpose of secondary gain (such as demanding a change in housing, protesting a disciplinary action, or protesting institutional practices)." JA297. A group hunger strike concerns DOC officials because it shows coordination among inmates and could lead to unrest or violence. JA284 (¶ 6).

Under DOC policy for dealing with hunger strikes, all commissary and private food supplies were removed from the four inmates' cells. *Id.* (¶ 7); *see* JA298. When one of the inmates discovered that his food was confiscated, he became agitated, refused to go into his cell, and showed threatening behavior, including kicking an officer. JA284 (¶ 8); *see also* JA292. He later threatened to harm DOC officers saying, "[y]ou will regret this. This isn't over." JA284 (¶ 8); *see* JA292. A metal lock, which could be used as a weapon, was later found hidden in the inmate's bandage during a search. JA284 (¶ 8); *see* JA308.

During a search of another inmate on a hunger strike, officers discovered a needle, several pieces of metal, and letters that had been passed between inmates containing information on how to conduct a hunger strike. JA285 (¶ 10); *see* JA313. These items concerned Vaughn staff because the metal could be used to make a weapon, and the letters suggested coordination between inmates. JA285 (¶ 10). Later that day, another inmate in the same SHU

building tried to stab an officer in the neck with a toothbrush made into a shank. JA285–JA286 (¶¶ 11–12); JA322.

Given the officer assaults, discovery of several weapons or potential weapons, and the hunger strike, Warden Emig submitted a request to Chief May for immediate CERT activation to locate any other weapons and maintain safety and security inside Vaughn. JA286 (¶ 13); JA385 (¶ 4). Chief May was briefed on the "very alarming" events that occurred that day in the SHU and approved the request. JA385–JA386 (¶¶ 5, 7). The CERT activation would include cell and strip searches in the SHU and on Waters, who had been moved to another location in Vaughn. JA286 (¶ 14); JA386 (¶ 6).

During the CERT shakedowns, Appellants allege that they were pepper-sprayed, punched, kicked, sexually assaulted, and humiliated. *See* JA22–JA39 (¶¶ 34–163). Incident reports filed after the shakedowns detail that pepper spray was used on Isaac Flores, Karl Manuel, Tyrone Morris, and Brian Snow-den after they refused to follow orders.[1] *See* JA347–JA383. No incident reports were completed for Darnell Pierce or Waters because the CERT did not use force. JA289 (¶ 30). Pierce and Waters filed Prison Rape Elimination Act

---

[1] Under DOC Policy 8.8, DOC staff must submit written reports documenting any use of force on inmates. *See* JA339–JA340.

complaints, alleging that they had been touched inappropriately. *Id.* (¶ 31). Both complaints were investigated and found unsubstantiated. *Id.*

## B.    Procedural History.

Over four months later, Appellants filed a complaint against Appellees Brian Emig, Captain Jason Coviello, and Todd Koch, and eleven other defendants. JA15–17. Appellants alleged that all the defendants used excessive force in violation of the Eighth and Fourteenth Amendments and that Warden Emig and another defendant failed to supervise those who violated Appellants' Eighth Amendment rights. JA44–JA48 (¶¶ 183–202).

Eleven days later, Appellants moved for a preliminary injunction. *See* Doc. 3.[2] They sought to enjoin the defendants from deploying the CERT without first obtaining a signed, written statement "stating that an emergency exists and describing in detail" various information about the emergency and nature of the CERT deployment. Doc. 3-1 at PageID #544–45 (citation modified); *see* JA5. Appellants also sought to enjoin the defendants from "deploying pepper grenades" in inmate's cells, "deploying pepper spray . . . from a distance closer than three feet," leaving pepper sprayed inmates "in any locked cell or

---

[2] "Doc." citations refer to documents on the district court docket. *See Flores v. Emig*, No. 25:00100 (D. Del.); *see also* Fed. R. App. P. 30(a)(2).

room without first properly decontaminating them," and "deploying the CERT in any arbitrary, unprovoked, and/or punitive manner." Doc. 3-1 at PageID #545 (citation modified); *see* JA5–JA6; JA48 (requesting an injunction "against any unconstitutional actions by the CERT").

While Appellants' motion was pending, the defendants moved to dismiss for failure to state a claim. *See* Doc. 20. The district court ruled on the defendants' motion to dismiss first, granting it in part. Doc. 38. The court denied the motion as to Appellees, but dismissed the claims against the remaining defendants because Appellants failed to allege facts to show that they were involved in the alleged incidences. *Id.* at PageID #1040–44, 1049–50.

The district court then denied Appellants' motion for preliminary injunction. JA2. The court held that Appellants lacked standing to seek injunctive relief because they did not "plausibly allege that they face an imminent threat of harm." JA9. Relying on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the court reasoned that Appellants failed to allege that they will "be subject to a shakedown again" and that even if they were subject to a shakedown, that they would be "subjected to the allegedly unconstitutional conduct." JA9–JA11.

This appeal follows.

## STANDARD OF REVIEW

This Court reviews "legal conclusions related to standing de novo" and "the factual elements underlying the District Court's determination of standing" for clear error. *Edmonson v. Lincoln Nat. Life Ins.*, 725 F.3d 406, 414 (3d Cir. 2013). Clear error exists "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## SUMMARY OF THE ARGUMENT

The district court applied the correct standard to analyze Appellants' standing to seek a preliminary injunction. To obtain a preliminary injunction, a plaintiff must make a clear showing on the merits and on the likelihood of establishing standing. This is a higher threshold than the plausibility standard used to evaluate a motion to dismiss. For this reason, on a motion for preliminary injunction, the court need not accept a plaintiff's allegations as true nor draw all reasonable inferences in their favor.

That Appellants' motion was filed pre-discovery changes nothing. Plaintiffs almost always seek preliminary injunctions right away. After all, a preliminary injunction is designed to stop imminent irreparable harm. If the early

posture changes anything, it changes only the *degree* of evidence needed to support standing, not the plaintiff's burden to show the right to injunctive relief.

The district court's standing analysis was also spot on. To seek prospective relief to address future harm, a plaintiff must show that the threatened injury is certainly impending. Under the seminal case of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), Appellants failed to show, however, a real and immediate threat of future harm. Rather, like the plaintiff in *Lyons*, Appellants' likelihood of future harm relies on a speculative chain of events. Indeed, far from imminent, not one Appellant experienced a shakedown—much less excessive force—in the six months from the alleged incident through the preliminary injunction briefing.

At its core, Appellants have no evidence that CERT members use excessive force every time they are deployed or that the DOC ordered or authorized the alleged unconstitutional conduct. On the contrary, they allege that the CERT members *violated* DOC policy in applying excessive force. Appellants' claim of future harm is thus based only on their subjective fear of another alleged attack rather than on the reality of such a threat.

10

Appellants try to invent a "less stringent" approach for inmate standing, but no such test exists. Courts simply apply *Lyons* to the facts at hand. In cases finding that inmates had standing to seek injunctive relief, the plaintiffs were challenging policies that caused the alleged harm, guaranteeing that the harm would recur. Appellants' alleged harm, on the other hand, requires the CERT to violate the DOC's policy against using excessive force, making Appellants' injury anything but certainly impending.

The Court should affirm.

## ARGUMENT

### I.    The district court correctly held that Appellants lacked standing for injunctive relief.

#### A.    The district court applied the correct standard to analyze Appellants' standing to seek injunctive relief.

The Constitution gives federal courts the power to adjudicate only "Cases" and "Controversies." U.S. Const. art. III, § 2. "Under Article III, a case or controversy can exist only if a plaintiff has standing to sue." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 286 (3d Cir. 2023). And standing must be shown "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC)*, 528 U.S. 167, 185 (2000). To establish standing, a plaintiff must "show that she

11

has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). Standing's elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To begin, the district court applied the correct standard to analyze Appellants' standing to seek a preliminary injunction. Appellants argue (at 12–15) that the district court should have analyzed standing under the more lenient plausibility standard for a motion to dismiss.[3] But that argument conflates the case's *progress* with the *burden* attendant to a motion. No matter when a motion for a preliminary injunction is filed, the plaintiff must make a clear showing on the merits and standing.

Start with a motion to dismiss. To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" by "plead[ing]

---

[3] In truth, the district court *did* analyze Appellants' allegations under the plausibility standard. *See* JA9 ("Plaintiffs do not plausibly allege that they face an imminent threat of harm . . . ."); JA11 ("Plaintiffs fail to plausibly allege either.").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). In reviewing a complaint, courts "must accept as true all material allegations" and "construe those facts" in the plaintiff's favor. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citation modified).

In turn, because "all aspects of a complaint must rest on well-pleaded factual allegations . . . , a plaintiff must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Finkelman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016) (citation modified). That is, a plaintiff must "plausibly allege" facts establishing each element of standing. *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015). And just as courts do for the merits, when "evaluating whether the complaint adequately pleads the elements of standing," courts accept the material facts as true and draw all reasonable inferences for the plaintiff. *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 701 (3d Cir. 2018). In short, on a motion to dismiss, the same standard applies to the facts supporting standing as applies to the merits—plausibility. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023).

13

A preliminary injunction, however, requires more. "A preliminary injunction is an extraordinary and drastic remedy, so the [plaintiff] bear[s] the burden of making a clear showing." *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 609 (3d Cir. 2024). Put another way, the plaintiff must make a "clear showing" that she is likely to succeed on the merits, that she would otherwise suffer irreparable harm, and that the equities cut in her favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). And when the plaintiff seeks a mandatory injunction, as Appellants do here, the burden is higher still: Appellants must "show a *substantial* likelihood of success on the merits and that their right to relief is indisputably clear." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (citation modified; emphasis added) (describing this as a "particularly heavy burden").

Now, "the 'merits' on which [a] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019) (citation modified). It follows, then, that "at the preliminary injunction stage . . . the plaintiff must make a clear showing that she is likely to establish each element of standing." *Murthy*, 603 U.S. at 58 (citation modified); *accord, e.g., Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) ("At the

preliminary injunction stage, plaintiffs must make a clear showing of each element of standing."); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020) (same).[4]

A "clear showing" is "a higher threshold than the one applicable at the pleading stage." *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 857 (6th Cir. 2024). For this reason, "most cases" that can "survive a motion to dismiss will not be able to satisfy the preliminary judgment standard." *Oxford House, Inc. v. Township of N. Bergen*, 158 F.4th 486, 496 (3d Cir. 2025); *see Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016) (noting the "significant differences between" a plaintiff's burden to withstand a motion to dismiss and to obtain a preliminary injunction); *New Hope Fam. Servs. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (explaining that securing a

---

[4] In fact, many circuits equate the burden to show standing for a preliminary injunction with the burden at summary judgment. *See, e.g.*, *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 113–14 (2d Cir. 2025) ("The evidentiary burden for establishing Article III standing for the purposes of a motion for a preliminary injunction is at least as onerous as the burden for establishing standing to secure a summary judgment."); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) ("[Plaintiff]'s burden to demonstrate standing in the context of a preliminary injunction motion is 'at least as great as the burden of resisting a summary judgment motion.'" (quoting *Lujan*, 497 U.S. at 907 n.8)); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015) (same); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (same).

preliminary injunction is a "heavier burden than [the plaintiff] bears in pleading [a] plausible claim necessary to avoid dismissal"). It thus makes sense that when deciding a preliminary injunction, courts *do not* have to "accept [the plaintiff's] allegations as true" or "give [the plaintiff] the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022); *see also New Hope*, 966 F.3d at 165 (contrasting that courts are "not required to accept all [the plaintiff]'s allegations as true or to draw all reasonable inferences in its favor" at the preliminary-injunction stage). Plausibility is the wrong measuring stick.

To be sure, the district court considered the preliminary injunction pre-discovery. Though that is hardly unusual. A court "almost always" decides a motion for preliminary injunction "based on an abbreviated set of facts." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 198 (3d Cir. 2024) (citation modified). Indeed, by nature of the relief requested, preliminary injunctions are typically sought "immediately." *Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*, 939 F.3d 534, 538 (3d Cir. 2019) (citation modified).

Still, Appellants insist (at 13–14) that this is the "pleadings stage" so a "pleadings stage" standard should apply. Wrong again. *See generally Delmarva Fisheries Ass'n v. Atl. States Marine Fisheries Comm'n*, 127 F.4th 509, 514 (4th Cir. 2025) (explaining what should happen procedurally "when plaintiffs meet their burden to establish standing for purposes of the *pleading* stage but . . . fail to show a substantial likelihood that they have standing" for a preliminary injunction (emphasis in original)). If the pre-discovery posture changes anything, it changes only the "*degree* of evidence" needed to support standing for a preliminary injunction, *Lujan*, 504 U.S. at 561 (emphasis added)—not the plaintiff's *burden* to show standing. In other words, even if *Murthy* intended to imply that mere allegations are enough to support a preliminary injunction before discovery,[5] *see* Appellants Br. 13, the "mere

---

[5] If *Murthy* were correctly read this way, it would overrule *sub silentio* longstanding precedent in this Court and others. *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 152 (3d Cir. 1999) ("[M]ere allegations will not support standing at the preliminary injunction stage."); *see also Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 219 (3d Cir. 2023) ("For a preliminary injunction, bare allegations are not enough; the [plaintiff] must produce evidence showing more than a mere possibility that their rights are threatened." (citation modified)); *accord Upsolve, Inc. James*, 155 F.4th 133, 139 (2d Cir. 2025) (explaining in the pre-discovery posture—and post-*Murthy*—that "when standing is at issue, a plaintiff seeking a preliminary injunction cannot rest on mere allegations but must set forth by affidavit or other evidence specific facts that establish . . . standing" (citation modified)).

allegations" must still "must make a 'clear showing' that [the plaintiff] is 'likely' to establish . . . standing." *Murthy*, 603 U.S. at 58; *see, e.g.*, *LA All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 956–57 (9th Cir. 2021) ("At the preliminary injunction stage, the plaintiffs must make a clear showing of each element of standing, relying on the allegations in their complaint and whatever other evidence they submitted . . . to meet their burden." (citation modified)).

At any rate, Appellants submitted far more evidence than just "mere allegations." *Murthy*, 603 U.S. at 57. Appellants supported their motion with a verified complaint, nine declarations, and other evidence. *See, e.g.*, JA15–JA277; JA406–JA412; JA446–JA454; *see generally Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 100 (3d Cir. 2017) (treating verified complaints as affidavits). And even with all that, the district court *still* held that they lacked standing for a preliminary injunction.

In the end, Appellants' appeal "really is about the result, not the process." *United States v. Hayden*, 775 F.3d 847, 851 (7th Cir. 2014). Yet just as the district court viewed the evidence through the right lens, the district court reached the correct result, too.

**B.    Appellants did not make a clear showing that they are likely to establish standing for injunctive relief.**

The district court correctly held that Appellants lacked standing to seek injunctive relief. To establish standing, an injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified). To seek prospective relief to address future harm, a plaintiff must show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Reading v. N. Hanover Twp.*, 124 F.4th 189, 196 (3d Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) ("[A]llegations of merely possible future injury are insufficient."). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding [equitable] relief . . . if unaccompanied by any continuing, present adverse effects." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

1.    Appellants did not make a clear showing that the threatened injury is certainly impending. As the district court recognized, *see* JA9, "[t]he relevant precedent is the seminal Supreme Court case" of *City of Los Angeles v.*

19

*Lyons*, 461 U.S. 95 (1983). *Penn. Prison Soc. v. Cortes*, 508 F.3d 156, 166 (3d Cir. 2007). In *Lyons*, police officers, "without provocation or justification," subjected Lyons to a chokehold during a routine traffic stop even though he "offered no resistance or threat whatsoever." 461 U.S. at 97–98. The district court entered a preliminary injunction against future use of police officer chokeholds under circumstances "which do not threaten death or serious bodily injury." *Id.* at 100.

The Supreme Court reversed. "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. Yet the first choking incident, occurring "five months" earlier, did "nothing to establish a real and immediate threat that he would again" be subject to a police chokehold. *Id.* at 105. Nor did the allegation that Los Angeles police officers "routinely apply chokeholds in [similar] situations" move the needle. *Id.* Rather, to establish standing for an injunction, Lyons had to allege not only that he would have another encounter with the police but also the "incredible assertion" that either "*all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter" or that the city "ordered or authorized police officers to act in such manner." *Id.* at 105–06 (emphasis in original).

20

Without these allegations, it was "no more than conjecture" that police officers would act unconstitutionally in every encounter with citizens and "surely no more than speculation" that Lyons would be involved in one of them. *Id.* at 108. The Court thus concluded that "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons [was] no more entitled to an injunction than any other citizen of Los Angeles." *Id.* at 111.

*Lyons* compels the same result here. At its core, Appellants' single past alleged injury does not help them show that future injury is "certainly impending." *Reading*, 124 F.4th at 196; *see O'Shea*, 414 U.S. at 495–96. Much like the plaintiff in *Lyons*, Appellants potential for future harm is based on the realization of several incremental steps, each laced with speculation: (1) A safety or security threat must occur at Vaughn that is serious enough to justify CERT activation (JA385 (¶ 3)); (2) Warden Emig must request CERT activation for a shakedown to search for contraband (JA385–JA386 (¶¶ 4–6)); (3) the Bureau of Prisons Chief must approve the CERT activation (JA384–JA86 (¶¶ 2–3, 7); JA286 (¶ 13)); (4) Appellants—5 of the 2,500 inmates at Vaughn—must be selected for a CERT shakedown[6] (JA283–JA284 (¶ 3);

---

[6] Waters was transferred to a prison in Minnesota and thus lacks standing to seek injunctive relief for a different reason. JA289 (¶ 32); *see Sutton v.*

JA386 (¶ 7)); (5) during the shakedown, Appellants must refuse to comply with directions; (6) CERT members must determine that "no reasonable alternative" to using force "is available" "to obtain compliance" (JA399; JA401); (6) CERT members must use force on Appellants; and (7) CERT members must *violate* DOC policy and the Eighth Amendment by using *excessive* force. JA401 ("Use of excessive force by Department employees or other persons is prohibited."); *Graham v. Connor*, 490 U.S. 386, 394 (1989). If this "long chain of hypothetical contingencies" seems unlikely, *Am. Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025), it should be no surprise that from the September 5, 2024 incident through the preliminary injunction briefing—over six months—Appellants submitted no evidence that they faced another CERT shakedown let alone that they were subjected to excessive force during one.[7] *See* JA15–JA49; Doc. 9. Indeed, the fact that Appellants "delayed" as long as

---

*Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (citation modified)).

[7] There is nothing "troubling" about the district court relying on "post-Complaint developments" when deciding a preliminary injunction motion. Appellants Br. 15 n.2. Prison officials "may rely" on "developments that post-date the pleadings and pretrial motions . . . to establish that the inmate is not entitled to an injunction." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). After all, the defendant's current conduct determines whether injunctive relief is warranted.

they did to "seek[] enforcement of their rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Del. State Sportsmen's Ass'n*, 108 F.4th at 206.

On top of this, like the plaintiff in *Lyons*, standing depends on Appellants alleging the "incredible assertion" that either "*all* [CERT members] . . . *always*" apply excessive force during shakedowns or that the DOC "ordered or authorized [CERT members] to act in such manner." *Lyons*, 461 U.S. at 105–06 (emphasis in original); *see* JA11. Appellants cannot assert either. As to the former, Appellants never alleged that all CERT members always use excessive force during shakedowns. In fact, the district court dismissed claims against several CERT members already because Appellants failed to allege that they violated Appellants' constitutional rights. *See* Doc. 38 at PageID #1040–42. Put another way, Appellants could not even allege in *this* incident that every CERT member violated their constitutional rights.

Nor can Appellants make the incredible assertion that the DOC ordered or authorized the CERT to violate Appellants' constitutional rights. DOC policy forbids using excessive force, *see* JA401, and Appellants allege repeatedly that the CERT violated this policy. JA23 (¶ 41); JA35 (¶ 134); JA37 (¶ 149); JA45 (¶¶ 186–87); JA47–JA48 (¶¶ 194, 201).

Appellants' scraps of evidence fix none of these deficiencies. For example, Appellants submitted declarations attesting that "the arbitrary, unprovoked, and unjustified nature of the attack" caused them to fear being attacked again. JA53 (¶ 21); JA59 (¶ 20); JA75 (¶ 28); JA99 (¶ 32); *see also* JA93 (¶ 18) (similar). For one, whether the alleged excessive force was justified or not does not change the calculus—*Lyons* too was decided when the conduct was alleged to be "without provocation or justification." 461 U.S. at 97. But more than that, "[i]t is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not [Appellants'] subjective apprehensions." *Id.* at 107 n.8 (emphasis in original); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013) (rejecting standing based on "fears of hypothetical future harm that is not certainly impending"). Yet Appellants can only speculate that "a real and immediate threat of future injury" exists. *Id.*

Or consider the only interaction that any of Appellants had with the CERT since the September 2024 incident. In January 2025, Snowden was taken to an outside medical facility for treatment. JA54 (¶ 25). When he arrived, he was "scared" to get off the bus because three CERT members were there. *Id.* (¶ 26). When the correctional officer who brought Snowden had to

use the restroom, a CERT member allegedly said, "We'll watch him. If he runs, that's what I've got a gun for. I'll shoot him in the head." *Id.* (¶ 27).

Appellants argue (at 16) that this interaction is "especially significant" to the standing analysis, but it is unclear why. No force was applied during the incident. JA54 (Snowden Decl. ¶¶ 25–27). The incident did not involve a "shakedown . . . intended to intimidate inmates"—the conduct that Appellants ask the Court to "stop." Appellants Br. 19 (citation modified). And even if the Court takes the comment at face value, the CERT member did not threaten to attack Snowden for no reason—the type of attack that Appellants fear. *See id.* at 17 (arguing that "[a] serious and continuing threat to Appellants' safety and well-being exists precisely because of the arbitrary, unprovoked, and unjustified nature of the CERT assaults in this case"). Rather, the CERT member said that he would use force "*if* [Snowden] runs." JA54 (¶ 27). If Snowden did not want to be attacked, he only had to not run. As it turned out, Snowden did not run, and everything was just fine.

Appellants' cherry-picking from the eight-year-old Final Report on the 2017 Vaughn riot does not help them either. *See* Appellants Br. 3–4, 19. In 2017, inmates seized part of Vaughn, took hostages, and killed a correctional officer. JA118. In turn, the Governor of Delaware commissioned a team to

"investigate and report on 'any conditions at [Vaughn] that contributed to the hostage situation on February 1, 2017.'" *Id.* The Final Report detailed the findings. *See* JA116–JA274.

For all the similarities that Appellants try to draw to the Final Report's findings on CERT conduct as of 2017, Appellants omit the main point. As reported to the investigators, inmates' main concerns related to CERT shakedowns were not excessive force. Rather, the "problem[]" with the "shakedowns that appeared to be intended to intimidate inmates" was "the use of masks to purposefully prevent identification of CERT members and their behaviors of intentionally or unintentionally destroying inmates' property." JA141. In other words, "[t]he issue described to the Independent Review Team, by inmates, is not that the shake downs occur, but how the CERT members are dressed while conducting them." JA137. Because "they were masked, the CERT members had the opportunity to intentionally or unintentionally destroy or discard the offenders' personal property, without being identified." *Id.*; *see also* JA261 (listing "the harassment of inmates by damaging or destroying their property under the guise of security searches and facility shakedowns" as one of the "inmate concerns"). In short, inmates were most

26

concerned that CERT members were anonymously destroying their property during shakedowns—not applying arbitrary and unprovoked excessive force.

At bottom, Appellants fall far short of their burden to show that excessive force during CERT shakedowns is "imminent" or "certainly impending." *Reading*, 124 F.4th at 196–97. To be sure, "imminence is a 'somewhat elastic' concept." *Ellison*, 11 F.4th at 205 (citation modified). But "it has been stretched beyond the breaking point when, as here, [Appellants] allege[] only an injury at some indefinite future time." *Lujan*, 504 U.S. at 564 n.2. Is it "*possible*" that plaintiffs are subjected to excessive force again? *Ellison*, 11 F.4th at 205 (emphasis added). Perhaps. But that is not enough. *Id.*; *see Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

2.    All but admitting that they lack standing under *Lyons*, Appellants urge the Court (at 11, 22, 28, 30–31) to take a "less stringent" approach to analyze whether inmates have standing to seek injunctive relief. But no such test exists. This Court has consistently applied *Lyons* to the prison setting when analyzing whether inmates have standing to seek injunctive relief. *See,*

27

*e.g., Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (holding that inmate lacked standing to challenge prison disciplinary procedures because he did not show "a real likelihood, much less an 'immediate threat,' that he will ever again be the subject of a prison disciplinary hearing"); *McCormick v. Kline*, 670 F. App'x 764, 765 (3d Cir. 2016) (affirming that "one past incident of abuse, even if serious, does not confer standing to seek injunctive relief" because "[a]bsent a real and immediate threat of future injury by the defendant, injunctive relief is not an appropriate remedy for the emotional consequences of single prior act"). To be fair, Appellants cite a few district courts finding that certain inmates had standing to seek injunctive relief. *See* Appellants Br. 25–27 (collecting cases). Yet even if this smattering of cases carried any weight before this Court,[8] that cases with different facts reached different results in the "forty years" since *Lyons* was decided is neither helpful nor surprising. *Id.* at 22.

---

[8] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 (2011); *see also United States v. Kluger*, 722 F.3d 549, 560 n.15 (3d Cir. 2013) ("We surely are not bound by unpublished district court opinions from courts in other circuits.").

At any rate, these cases support Appellees not Appellants. In the cited cases, the plaintiffs were seeking injunctive relief against prison *policies* in effect, which all but guaranteed that future injury would occur. *See, e.g.*, *Golden v. Baenen*, 2013 WL 3773396, at *1, *3 (E.D. Wis. July 17, 2013) (challenging "policy of allowing correctional officers to distribute medications"); *Mack v. Suffolk Cnty.*, 191 F.R.D. 16, 21 (D. Mass. 2000) (challenging "an iron clad policy" that would be applied again "with utter certainty"); *Preston v. Gutierrez*, 1993 WL 280819, at *2 (W.D. Mo. July 23, 1993) (seeking injunction against "policy for involuntarily medicating patients"); *Osterback v. Moore*, 2001 WL 1770092, at *4 (N.D. Fla. Nov. 6, 2001) (finding that inmate had standing when "[a]pplication of Defendant's policy" caused plaintiff's injury); *Ingles v. City of New York*, 2003 WL 402565, at *9 (S.D.N.Y. Feb. 20, 2003) (finding that inmates had standing to seek injunctive relief against "a policy of excessive force"); *Lake v. Speziale*, 580 F. Supp. 1318, 1328 (D. Conn. 1984) (challenging policy that was "highly likely" to be applied again);[9] *Shreve v. Franklin Cnty., Ohio*, 2010 WL 5173162, at *9 (S.D. Ohio Dec. 14,

---

[9] Although the plaintiff in *Lake* spent "one day in jail" after the contempt hearing in which the alleged unconstitutional policy was applied, 580 F. Supp. at 1323, *Lake* is not a "case[] involving injunctions sought by incarcerated individuals." Appellants Br. 22.

2010) (alleging "a custom and policy whereby inmates . . . are routinely subjected" to tasering); *Williams v. Wilkinson*, 132 F. Supp. 2d 601 (S.D. Ohio 2001) (challenging unwritten policy applied during disciplinary hearings); *Johnson v. McCowan*, 549 F. Supp. 3d 469, 476 (W.D. Va. 2021) ("seek[ing] injunctive relief regarding [prison]'s policies on the use of dogs"); *see also Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (challenging written policy and established practice governing parole hearing processes).

Here, however, Appellants are not challenging a *policy* at Vaughn that will inevitably be applied again. Just the opposite. Appellants allege repeatedly that the alleged conduct "violated" the DOC's policy on excessive force. JA23 (¶ 41); JA35 (¶ 134); JA37 (¶ 149); JA45 (¶¶ 186–87); JA47–JA48 (¶¶ 194, 201); *see, e.g.*, *Lake*, 580 F. Supp. at 1328 (distinguishing *Lyons* as "very different" because "[i]n this case it is the *conformance* with the policy that brings about the alleged injury" (emphasis in original)); *Williams*, 132 F. Supp. 2d at 606 (same). Appellants thus seek to enjoin "episodic" conduct like that in *Lyons*, "occurring only when [CERT members] determine[] that the use of [force is] necessary, rather than a routine procedure, authorized for use at every" shakedown. *Mack*, 191 F.R.D. at 21 (citation modified).

30

No doubt, some courts have emphasized that incarceration made it more likely that the plaintiffs would encounter the challenged conduct. *See, e.g.*, *Williams*, 132 F. Supp. 2d at 606 (finding future injury likely when "only one step would be necessary to reach the complained of conduct" because plaintiff is in "continual contact with correction officers whose job it is to scrutinize closely his behavior for possible rule infractions"); *Johnson*, 549 F. Supp. 3d at 478 (finding future injury likely because "he will certainly encounter [prison] canine officers, likely every day"); *Golden*, 2013 WL 3773396, at *1, *3 (noting that inmate was "subject to the complained-of policies every day"); *Hernandez v. County of Monterey*, 70 F. Supp. 3d 963, 968, 975 (N.D. Cal. 2014) ("alleg[ing] a litany of substandard conditions at the jail" that "all inmates in the jail are alleged to be at risk simply by virtue of being detained"). But Appellants allege nowhere that they are in daily, weekly, or even monthly contact with the CERT, which can be deployed only under specific circumstances and only after the Bureau of Prisons Chief authorizes it. *See supra* at 3.

\*    \*    \*

To sum up, Appellants lack standing for an injunction because they have not shown a "real and immediate threat of repeated injury" with more than

"past exposure to illegal conduct." *Lyons*, 461 U.S. at 102 (citation modified).

The Court should thus "decline the invitation to slight the preconditions for

equitable relief" and affirm. *Id.* at 112.

## CONCLUSION

The Court should affirm the district court's order denying Appellants'

motion for a preliminary injunction.

January 21, 2026                           Respectfully submitted,

                                           /s/ *Marisa R. De Feo*

                                           MARISA R. DE FEO
                                           HUSCH BLACKWELL LLP
                                           3411 Silverside Road
                                           Suite 104 B #203
                                           Wilmington, DE 19810
                                           302.506.8036
                                           202.378.2319 (F)
                                           Marisa.DeFeo@huschblackwell.com

                                           DANIEL G. SOLOMON
                                           HUSCH BLACKWELL LLP
                                           1801 Pennsylvania Ave., NW
                                           Suite 1000
                                           Washington, DC 20006
                                           202.378.2391
                                           danny.solomon@huschblackwell.com

                                           *Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the type-volume requirements and limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,909 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2020 in 14-point Century Supra font.

3.     This brief complies with L.A.R. 46.1(e) because at least one of the attorneys whose name appears on the brief is a member of the bar of the United States Court of Appeals for the Third Circuit.

4.     This brief complies with L.A.R. 31.1(c) because the text of the electronic brief is identical to the text in the paper copies and because the virus detection program SentinelOne Version 25.1.3.334 has been run on the file, and no virus was detected.

/s/ *Marisa R. De Feo*
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2026, I electronically filed the above with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Marisa R. De Feo*
*Counsel for Appellees*