**No. 25-2665**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

ISSAC FLORES, KARL MANUEL, TYRONE MORRIS, DARNELL PIERCE, BRIAN SNOWDEN & JAMAR WATERS

Appellants/Appellants Below

v.

BRIAN EMIG, CAPT. COVIELLO & TODD KOCH

Appellees/Defendants Below

On Appeal from the U.S. District Court Del.
C.A. No. 1:25-cv-00100-GBW
Judge Gregory B. Williams

## REPLY BRIEF OF THE APPELLANTS

<u>/s/ *Jason H. Beehler*</u>
Jason H. Beehler
DE Bar No. 7480
ACLU of Delaware
100 W. 10th St., Suite 706
Wilmington, DE 19801
T: 302-654-5326
E: jbeehler@aclu-de.org

Dwayne J. Bensing
DE Bar No. 6754
ACLU of Delaware
100 W. 10th St., Suite 706
Wilmington, DE 19801
T: 302-295-2113
E: dbensing@aclu-de.org

Judah Rome
Troutman Pepper Locke
One Financial Plaza
Westminster St., Suite 2800
Providence, RI 02903
T: 401-274-9200
E: judah.rome@troutman.com
*Admitted Pro Hac Vice*

Christopher M Brolley
Troutman Pepper Locke
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
T: 215-981-4000
E: christopher.brolley@troutman.com
*Admitted Pro Hac Vice*

***Attorneys for Appellants***

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS**.................................................................................. i

**TABLE OF AUTHORITIES**........................................................................... ii

**INTRODUCTION**...........................................................................................1

I.      This Court should reject Appellees' extreme test, unsupported
        by law, under which litigants would have standing only if they allege
        an injury is "certainly impending" ...........................................................2

        A. Third Circuit case law does not support Appellees' inflation
           of the standing test. ........................................................................2

        B. Appellees misconstrue nonbinding out-of-Circuit case law,
           which in fact supports Appellants' position. ...................................6

II.     *Lyons* alone does not control, and Appellees are wrong to ignore
        post-*Lyons* cases that clarify the standing test for incarcerated
        people seeking injunctive relief................................................................10

**CONCLUSION**..............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016)..............................................3

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) ...............................................7

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210 (3d Cir. 2015) ...............13

*Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024) ...........9

*Cottrell v. Alcon Lab'ys*, 874 F.3d 154 (3d Cir. 2017) ................................................5

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
    108 F.4th 194 (3d Cir. 2024)...................................................................................3

*Delmarva Fisheries Ass'n, Inc. v. Atl. States Marine Fisheries Comm'n*,
    127 F.4th 509 (4th Cir. 2025)..................................................................................9

*Do No Harm v. Pfizer*, 126 F.4th 109 (2d Cir. 2025)........................................ 6, 7, 8

*Do No Harm,* 126 F.4th 109 (2d Cir. 2025)....................................................... 6, 7, 8

*Doe v. Nat'l Bd. of Med. Exam'rs,* 199 F.3d 146 (3d Cir. 1999) ..............................4

*Doe v. Univ. of S. Ind.*, 43 F.4th 784 (7th Cir. 2022)..................................................6

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016)............................7

*FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834 (3d Cir. 1996) ....2

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) .......................9

*Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020) .............................3

*LA All. for Hum. Rt.s v. County of Los Angeles*, 14 F.4th 947 (9th Cir. 2021)...........9

*Limetree Bay Ventures, LLC*, 110 F.4th 604 (3d Cir. 1987)......................................3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................................7

*Lutter v. JNESO*, 86 F.4th 111 (3d Cir. 2023) ........................................................2

*Murthy v. Missouri*, 603 U.S. 43 (2024) ...............................................................9

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215 (3d Cir. 2023) ......4

*New Hope Fam. Servs. v. Poole*, 966 F.3d 145 (2d Cir. 2020) ..................................6

*New Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015 ..........2

*Oxford House, Inc. v. Township of N. Bergen*, 158 F.4th 486 (3d Cir. 2007) ............3

*Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*, 939 F.3d 534 (3d Cir. 2019) .......3

*Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96 (3d Cir. 2017)........................3

*Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990) .............................................2

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .............................................................5

*States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669 (1973).............................................................................................5

*Townley v. Miller*, 722 F.3d 1128 (9th Cir. 2013) .....................................................10

*Williams v. Ponik*, 822 F. App'x 108 (3d Cir. 2020)..................................................13

# **INTRODUCTION**

Right out of the gate, Appellees trot out a favorite old trope of correctional systems: Appellants are inviting the federal courts to "micromanag[e]" the James T. Vaughn prison. (Appellees' Br. 1.) Plaintiffs do not ask the federal courts to decide what incarcerated people eat for lunch, how much rec time they should get every day, what time lights out should be, or any other detail of everyday prison management. Appellants ask the courts to enjoin correctional officers' shockingly violent and inhumane treatment of incarcerated people. Appellees' attempt to justify their actions during the September 5, 2024 CERT raid lays bare the kind of callousness and indifference that permeates certain government institutions when our courts don't act to guarantee the constitutional rights of vulnerable people. Prisons need not be resorts. But nor should they be a lawless realm where correctional officers can inflict serious injuries on incarcerated people with total impunity. Appellants ask the courts to vindicate well settled civil rights protections, and in the process protect human dignity.

In their Brief, Appellees contend that the District Court applied the proper standard when deciding whether Appellants had sufficiently alleged standing to seek injunctive relief. (Br. Opp. 11-18.) They also claim that Appellants have not shown they are likely to establish standing. (Br. Opp. 19-31.) Appellees are wrong on both counts.

I.      **This Court should reject Appellees' extreme test, unsupported by law, under which litigants would have standing only if they allege an injury is "certainly impending."**

Appellees cite a dizzying array of cases. (Br. iii-vi) (64 cases). However, none support Appellee's extreme position regarding the standing test that applies to litigants seeking injunctive relief. Appellees attempt to inflate beyond all rational boundaries the standing requirement for preliminary injunctive relief to a "certainly impending" standard. (Appellees' Br. 13-81.) The Third Circuit cases that Appellees cite in support of such a proposition do not in fact aid their argument, nor do the profuse out-of-circuit cases that Appellees cite.

A. **Third Circuit case law does not support Appellees' inflation of the standing test.**

Appellants cited Third Circuit and U.S. Supreme Court cases in support of their argument that the District Court applied the wrong standard. (Appellants' Br. 12, 15, 20) (*citing New Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369, 371 (3d Cir. 2015); *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996); *Pennell v. City of San Jose*, 485 U.S. 1 (1988); *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023); *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990)). Appellees do not cite or even mention any of these cases. (Appellees' Br. iii-vi.) Instead, Appellees throw a litany of cases at the wall, most misinterpreted or misapplied, hoping that something sticks.

2

Many of Appellees cited authorities do not even involve standing. *Boynes v. Limetree Bay Ventures, LLC*, 110 F.4th 604 (3d Cir. 1987) (no mention of standing); *Oxford House, Inc. v. Township of N. Bergen*, 158 F.4th 486 (3d Cir. 2007) (same); *Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016) (same). Interestingly, *Oxford House* actually demonstrates Appellants' point that the trial court ordinarily should not dismiss preliminary injunctive relief on standing grounds until "after ordering limited discovery for purposes of that motion." 158 F.4th at 489. Appellants have already noted that the District Court in this case should have permitted limited discovery if the Court had any question about Appellants' standing. (Appellants' Br. 13.)

Four other cases Appellees cite involve principles that are not disputed in this appeal. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020) (party moving for injunctive relief must show a substantial likelihood of success on the merits); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024) (courts adjudicate preliminary injunction motions on an abbreviated set of facts); *Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*, 939 F.3d 534 (3d Cir. 2019) (movant typically seeks preliminary injunction on an expedited basis); *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96 (3d Cir. 2017) (treating verified complaints as affidavits).

Most relevant to the standard at issue here, Appellees cite two Third Circuit cases on page 17 of their Brief. *Doe v. Nat'l Bd. of Med. Exam'rs,* 199 F.3d 146 (3d Cir. 1999); *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215 (3d Cir. 2023). These cases are easily distinguishable. In *Doe*, this Court found that the plaintiff had in fact established standing based on a concrete injury. 199 F.3d at 153. The Court vacated the preliminary injunction because the plaintiff could not show a likelihood of success on the merits based on the language of the federal statute at issue in the case. *Id*. at 155-57. In *National Shooting*, the plaintiff brought a pre-enforcement challenge to a New Jersey gun law. 80 F.4th at 218. This Court found the plaintiff lacked standing because it had not yet suffered any injury, the state Attorney General had not yet tried to enforce the law against anyone, and the Court saw, "little evidence that enforcement is looming." *Id*. at 217-18. The Appellants in this case, by contrast, have been savagely assaulted and beaten by a paramilitary force in riot gear and masks, resulting in serious injuries. (Appellants' Br. 5-9.)

*National Shooting* is in fact relevant to this case, albeit not for the reason Appellees claim. In that case, this Court said: "To be 'imminent,' either a threat of injury must be 'certainly impending,' **_or_** there must at least be 'a substantial risk that the harm will occur.'" *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 218 (3d Cir. 2023) (emphasis added). That, of course, is

exactly what Appellants in this lawsuit claim: that there is a substantial risk that they will suffer the same harm they have already suffered once. (D.I. 4, 10-13.) Appellees suggest that Appellants must prove definitively at the preliminary injunction phase that they would be attacked by CERT members again. (Appellees' Br. 23.) Appellants must show only a substantial risk that the harm will occur. *Nat'l Shooting* at 218.

This Court has also explained that federal courts "must determine whether Plaintiffs' alleged injuries are 'actual or imminent' rather than merely 'conjectural or hypothetical.'" *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 167–68 (3d Cir. 2017) (*citing Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). This component of injury-in-fact is designed to separate those plaintiffs who have alleged "that [they] ha[ve] been or will in fact be perceptibly harmed by the challenged [defendants'] action" from those who claim only that they "can imagine circumstances in which [they] could be affected by the [defendant's] action." *Cottrell* at 168 (*citing States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688-89 (1973). In short, Plaintiffs' "pleadings must be something more than an ingenious academic exercise in the conceivable." *Id.*

Appellants do not have to imagine the circumstances in which they could be affected by the Appellees' actions. Because they are incarcerated, they live in those

circumstances all day, every day, which is part of what makes them so susceptible to future injury at the hands of CERT members. (Appellants' Br. 21-28.)

### B. Appellees misconstrue nonbinding out-of-Circuit case law, which in fact supports Appellants' position.

Appellees pepper their Third Circuit case citations throughout an argument section crammed with a hodge-podge of nonbinding out-of-circuit case law that does not support Appellees' argument for an extraordinarily onerous test to demonstrate standing sufficient to obtain injunctive relief.

Here again, some of the cases Appellees cite have no bearing on the standing test. *Doe v. Univ. of S. Indiana* didn't even involve a standing question. *Doe v. Univ. of S. Ind.*, 43 F.4th 784 (7th Cir. 2022). Neither did *New Hope Fam. Servs. v. Poole*, 966 F.3d 145 (2d Cir. 2020) (same).

Next, Appellees curiously claim that "many circuits equate the burden to show standing for a preliminary injunction with the burden at summary judgment." (Opp. Br. 15, n.4) (*citing Do No Harm v. Pfizer*, 126 F.4th 109, 113-14 (2d Cir. 2025)). This is where Appellees' argument jumps the shark. Appellees' proposition, if accurate, would require trial courts to deny injunctive relief in every case in which the plaintiff cannot definitively establish a fact *at the time the case is filed*, without the benefit of any interrogatories, document requests, depositions, or other discovery. That is not, has never been, and never should be the law of this Circuit. Rather, this Court has clearly and repeatedly stated that, "each element [of

6

standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the <u>successive stages of the litigation</u>." *See, e.g., Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis added). So the burden at summary judgment (a later successive stage of litigation) is not the same as the burden when the complaint is filed, and for good reason.

Appellees inaccurately interpret the *Do No Harm* case. 126 F.4th 109 (2d Cir. 2025). In *Do No Harm*, the Second Circuit cited to *Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011). In *Cacchillo*, the court stated that to establish standing for a preliminary injunction, a plaintiff cannot rely on unsworn general fact allegations in a pleading, but must instead, "set forth by affidavit or other evidence specific facts, <u>which for purposes of the summary judgment motion will be taken to be true</u>." *Id.* at 404. (emphasis added and internal quotation marks omitted) (*cited in Do No Harm v. Pfizer*, 126 F.4th 109, 113-14 (2d Cir. 2025)). Appellants made this very point in their merits Brief. (Appellants' Br. 12) (*citing N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 (3d Cir. 2015)).

Consistent with Appellants' argument, the Second Circuit then stated: "Where, as here, the parties **have taken discovery**, the plaintiff cannot rest on

'mere allegations,' but must instead point to factual evidence." *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 122 n. 6 (2d Cir. 2025) (emphasis added).

Then, the Second Circuit discussed a case in which,

> [T]he plaintiff may require jurisdictional discovery to get the evidence needed to support the plaintiff's standing. *See, e.g., Klayman*, 800 F.3d at 564 (opinion of Brown, *J.*) (noting that, on remand, the district court could determine whether to allow limited discovery to explore jurisdictional facts); *id.* at 568 (opinion of Williams, *J.*) (same). "[P]recisely because the plaintiff bears the burden of alleging facts demonstrating standing, we have encouraged district courts to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction' where necessary." *Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017).

*Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121 (2d Cir. 2025).

Indeed.

Appellants supported their allegations with sworn Declarations. J.A. 51-55, 57-60, 72-76, 91-94, 96-100, 102-105. No discovery had taken place at the time the District Court dismissed Appellants' Motion for injunctive relief. J.A. 467, Tr. 13:17-18. The District Court therefore had a choice: accept Appellants' sworn statements as true because no discovery had been taken, or permit limited discovery to allow Appellants the chance to support their standing to seek injunctive relief. In choosing neither, the District Court erred.

Two other out-of-circuit cases Appellees cite in their attempt to inflate Appellants' standing obligations undermine Appellee's position for a different reason. In *Christian Healthcare*, the Sixth Circuit stated that the movant must make, "the clear showing that [it] is <u>likely to establish</u> each element of standing necessary to receive a preliminary injunction." *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 857 (6th Cir. 2024) (quoting *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)) (emphasis added and internal quotation marks omitted). The D.C. Circuit's *Food & Water Watch* says the same. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Appellees acknowledge this doctrine in their Brief, but disregard its implications for this case—namely, that Plaintiffs should have had the opportunity to establish the elements of standing through limited discovery, if the trial court had any doubts. (Appellants' Br. 13.)

Three additional cases that Appellees cite are inapposite because they involve standing infirmities inapplicable to the Appellants. Some of the Plaintiffs in *LA Alliance for Human Rights* could not demonstrate that they suffered any injury, and those who could were not able to demonstrate how the requested relief would help them. *LA All. for Hum. Rt.s v. County of Los Angeles*, 14 F.4th 947, 958-59 (9th Cir. 2021). The plaintiffs in *Delmarva Fisheries* lacked standing on redressability grounds. *Delmarva Fisheries Ass'n, Inc. v. Atl. States Marine Fisheries Comm'n*, 127 F.4th 509, 516 (4th Cir. 2025) (plaintiffs "failed to plead

9

facts showing that an injunction . . . would likely redress their injuries"). And in *Townley*, "plaintiffs . . . failed to establish that the injury alleged . . . is fairly traceable to the conduct being challenged." *Townley v. Miller*, 722 F.3d 1128, 1136 (9th Cir. 2013).

Appellants have none of these problems. Although they do not know specifically which CERT members assaulted them—because the CERT members were wearing riot gear and masks, all too familiar to courts in recent excessive enforcement actions throughout the country—they know that they were injured by CERT members (who will be identified through discovery). J.A. 51 (¶ 5), 57 (¶ 6), 72 (¶ 6), 91 (¶ 4), 97 (¶ 7), 102 (¶ 6). And an injunction to prevent CERT members from inflicting additional physical and psychological injuries on Appellants would certainly redress their injuries. (D.I. 3-1.)

Even if the Court were tempted to reach for out-of-circuit case law to resolve the issues in this appeal, the cases Appellees cite provide no help.

## II. *Lyons* alone does not control, and Appellees are wrong to ignore post-*Lyons* cases that clarify the standing test for incarcerated people seeking injunctive relief.

Appellees, like the District Court, rely almost entirely on *Lyons* to support their argument that dismissal was appropriate. (Appellees' Br. 19.) In doing so, Appellees discount both the vastly different context of *Lyons* with that of

incarcerated plaintiffs, as well as the more than forty years of case law since *Lyons*. (Appellants' Br. 22-28) (citing and collecting post-*Lyons* cases).

To start, the question before the District Court was whether *Appellants* alleged sufficient facts to show they are likely to establish standing, especially as it relates to the likelihood of future harm. J.A. 13. Appellants need not refute Appellees' assertions about what happened on September 5, 2024, and the likelihood that CERT members will harm Plaintiffs in the future. Appellees miss the mark by presenting their account of the September 5 CERT raid and whether Appellees have alleged a plausible explanation for their actions on that date. On this point, the District Court gave short shrift to Plaintiff-Appellant's allegations and instead adopted as true Appellees' version without providing Appellants an opportunity to address any standing questions through discovery.

The allegations relevant to the likelihood of CERT members inflicting future harm on Appellants are:

- CERT has a history of inappropriate masked shakedowns. J.A. 43-44 (¶¶ 175 – 181).

- The CERT assault on every single person in Building 18 was occasioned not by a building-wide emergency, but in response to incidents that are (unfortunately) common in prison, increasing the likelihood of additional unmerited activations in the future. J.A. 284-85 (describing hunger strike, contraband, isolated attack on one correctional officer).

11

- Appellants did not pose any threat to CERT members at the time they were assaulted. J.A. 53 ¶17; J.A. 58 ¶ 10; J.A. 73 ¶9; J.A. 91, ¶ 6; J.A. 98 ¶ 26; J.A. 102 ¶ 6; J.A. 104 ¶ 18.

- The CERT raid was random and unannounced, increasing the likelihood that future CERT shakedowns will occur at any time, for any reason or no reason. J.A. 53 ¶ 21; 59 ¶ 20; 75 ¶ 28; 93 ¶ 18; 99 ¶ 32;104 ¶ 21.

- A CERT member's threat to shoot Appellant Brian Snowden during an off-site medical appointment. J.A. 54 ¶ 27.

- CERT members continued to perform frequent shakedowns[1] throughout the Vaughn complex after the September 5, 2024 raid, as often as once a week. (D.I. 48, ¶¶ 17-1.)[2]

Appellants submit that these facts show at the least that they are likely to establish standing, especially with the aid of limited discovery. To that end, Appellants filed a Motion for Expedited Discovery on March 28, 2025. (D.I. 18.) The District Court never ruled on it until after dismissing Appellants' request for injunctive relief, at which point the District Court denied that Motion as moot. J.A. 2, 13.

---

[1] Appellants also note that in the proceedings below since this appeal was filed, Defendant Koch stated: "Twice a week, once a week, twice a week, there are CERT guys, typically eight, and we do shakedowns at James T. Vaughn and Howard R. Young * * * I have been doing shakedowns a lot." (Koch Dep. 49:1-13.) During each activation, CERT members conduct eight to ten total shakedowns. (Koch Dep. 49:14 - 50:6.) (D.I. 75:1.) Appellants alert the Court to this testimony not to conclusively establish these facts on appeal, but to demonstrate that the District Court was too hasty in dismissing Appellants' request for injunctive relief without any discovery.

[2] Although Mr. West is not yet a Plaintiff, he was assaulted during the September 5, 2024 raid, and his Declaration was before the District Court well before the Opinion dismissing Appellants' request for injunctive relief. (D.I. 48.)

Appellants cited extensive case law regarding the modified test some courts have adopted when considering standing of incarcerated plaintiffs to seek injunctive relief. (Appellants' Br. 22-28) (citing and collecting cases). Appellees dismiss all of this authority on the grounds that the litigants in those cases, "were seeking injunctive relief against prison *policies* in effect, which all but guaranteed that future injury would occur." (Appellees' Br. 29) (emphasis in original). This position draws a distinction without a difference. There is no question that incarcerated people injured by excessive force can seek relief whether or not they were injured because of the deliberate indifference of prison officials. *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 226-27 (3d Cir. 2015) (discussing deliberate indifference claims); *Williams v. Ponik*, 822 F. App'x 108, 112–13 (3d Cir. 2020) (discussing how litigant may demonstrate a "custom that resulted in a constitutional violation").

Only in Appellees' world does it make sense that incarcerated people would have standing to seek injunctive relief when they are injured by correctional officers following a facially unconstitutional policy, but no standing to seek that same relief when correctional officers needlessly, flagrantly, and remorselessly violate a written policy intended to protect incarcerated people from that very type of abuse.

13

In any event, what Appellants challenge is the long-standing and rampant use of a team of supposedly "emergency" responders to inflict physical and psychological injuries on an entire building full of people who did nothing at all to justify any attack, much less the excessively violent and dangerous attacks perpetrated by Appellees here. J.A. 22-39. Of course the DOC does not have a written policy that says, "CERT members shall inflict injury upon incarcerated people at will." A request to enjoin conduct endorsed by that policy would be a layup. This case involves something more pernicious: the use of masked officers in riot gear to assault every single person in Building 18 on the basis of incidents that were no longer emergent, and that in fact involved only a handful of people in the building. J.A. 284 (¶¶ 6,8); J.A. 285 (¶¶ 10-11). It is well established in excessive force case law that Appellants may challenge such conduct. That should be evident from the fact that Appellees never raised this issue in their Motion to Dismiss or their Memorandum in Opposition to Appellants' request for injunctive relief. *See generally* D.I. 20, D.I. 8. Nor did the District Court mention this issue in its Opinions on either Motion. D.I. 38; J.A. 3-14.

Appellants have demonstrated that they have standing. If the District Court questioned Appellants' standing, it should have allowed limited discovery. It was therefore error for the District Court to dismiss Appellants' request for injunctive relief on standing grounds.

## CONCLUSION

Appellants request that this Court reverse the decision of the District Court and remand this case for further proceedings in accordance with this Court's resolution of the issues on appeal.


/s/ *Jason H. Beehler*
Jason H. Beehler
DE Bar No. 7480
ACLU of Delaware
100 W. 10th St., Suite 706
Wilmington, DE 19801
T: 302-654-5326
E: jbeehler@aclu-de.org

Dwayne J. Bensing
DE Bar No. 6754
ACLU of Delaware
100 W. 10th St., Suite 706
Wilmington, DE 19801
T: 302-295-2113
E: dbensing@aclu-de.org

Judah Rome
Troutman Pepper Locke
One Financial Plaza
Westminster St., Suite 2800
Providence, RI 02903
T: 401-274-9200
E: judah.rome@troutman.com
*Admitted Pro Hac Vice*

Christopher M Brolley
Troutman Pepper Locke
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
T: 215-981-4000
E: christopher.brolley@troutman.com
*Admitted Pro Hac Vice*

**Attorneys for Appellants**

## **CERTIFICATION OF ADMISSION TO THE BAR**

I, Jason Hayes Beehler, certify as follows:

1. I am a member of good standing of the bar of the State of Delaware, and the
   bar of the United States Court of Appeals for the Third Circuit;

2. Pursuant to 28 U.S.C. § 1746, the foregoing is true and correct.

Dated: February 10, 2026

/s/ *Jason H. Beehler*

Jason H. Beehler

16

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 3,443 words.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Cortex XDR Agent Version 9.0.0 virus detection software has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: February 10, 2026

/s/ *Jason H. Beehler*

Jason H. Beehler

17

## **CERTIFICATE OF FILING AND SERVICE**

I certify that on this 10th day of February 2026, I filed the foregoing Reply Brief through the CM/ECF system, which serves copies of these papers on all parties or their counsel of record.

/s/ *Jason H. Beehler*

Jason H. Beehler